729 So.2d 142 (1999)
STATE of Louisiana
v.
Derrick WILLIAMS.
No. 98-K-3059.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1999.
*143 Harry F. Connick, District Attorney, Roger Kitchens, Assistant District Attorney, Cate Bartholomew, Assistant District Attorney, David W. LaBalle, II, Law Clerk, New Orleans, Louisiana, Counsel for Plaintiff-Relator.
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge Pro Tempore PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tempore.
Relator, the State of Louisiana, seeks this court's supervisory review of the trial court's granting of the defendant's motion to suppress the evidence.
On February 16, 1998, the defendant, Derrick Williams, was charged with one count of possession with the intent to distribute cocaine, a charge to which he has pled not guilty. His motion to suppress the evidence was heard and granted on November 13, 1998. The State now comes before this court with a timely writ seeking relief from this ruling.
Shortly after 6:00 p.m. on February 1, 1998, police officers on patrol in the Sixth District were investigating the area of St. Mary and St. Thomas Streets in the St. Thomas housing project, an area known for narcotics trafficking. The officers observed two men, the defendant and an unidentified man, standing together near a porch of a building in the project. As the officers watched, they saw the defendant extend his hand toward the other man, who was standing with his hand palm up, and the defendant was showing the other man an object that the officers could not see. As the officers stopped their car and exited, the men became aware of their presence, and the unknown man turned and ran from the scene. The defendant remained where he was standing. While one officer chased the unknown man, who escaped, the other officer detained the defendant and ordered him to place his hands on the police car. The officer frisked the defendant and felt a large bulge in the defendant's right hand pocket, which the officer believed to be a bag of individual bags of powdered cocaine. The officer ordered the defendant to empty his pocket, and the defendant pulled a bag out of his pocket containing forty-eight smaller bags of a powdered substance later found to be cocaine. The officers arrested defendant, conducted a further search, and seized $120.00 from his pockets. When the officers discovered the cocaine, the defendant told them, "That's not nothing."
At the suppression hearing, the defense argued that the officers did not have reasonable suspicion to stop the defendant and his companion. Without a valid stop, the subsequent frisk and discovery of the cocaine would be unlawful. In State v. Sneed, 95-2326, *144 p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, this court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. In addition, once reasonable suspicion is found, paragraph B of art. 215.1 provides:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La. 1979). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956, pp. 7-8 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1299, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a patdown for weapons, but only if he "reasonably suspect that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
Here, the officers were patrolling in an area known for drug trafficking. They observed the defendant and another man standing near a porch, and the defendant was reaching his hand toward the other man's open palm. The officer testified he could see there was some object in the defendant's hand, but he could not see what the object was. When the men noticed the officers, the other man ran and ultimately escaped. The officer testified the defendant looked around like he was going to run but realized he did not have time to escape.
At the suppression hearing, defense counsel cited State v. Benjamin, 96-2781 (La. App. 4 Cir. 11/26/97), 703 So.2d 192, for the proposition that the officers did not have reasonable suspicion to stop the defendant and his companion. In Benjamin, officers were on routine patrol when they came upon the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running down the street. Believing *145 the defendant was carrying a weapon or contraband, the officers gave chase and eventually captured the defendant and retrieved a gun that he had abandoned during the chase. The trial court denied the defendant's motion to suppress the gun and a statement he made at his arrest. On review, this court reversed. This court first noted that the actions of the officers constituted an imminent stop, for which they needed reasonable suspicion, and this court further found reasonable suspicion was lacking. This court noted that the officers who chased the defendant did so only because he began running and had grabbed at his waistband. This court pointed out that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant's part. Having found there was an imminent stop and that the officers did not have reasonable suspicion to support the stop, this court suppressed the evidence abandoned by the defendant.
However, the Supreme Court reversed this court's ruling. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. The Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The Court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, p. 3, 722 So.2d at 989.
Here, the officers observed activity between the defendant and his companion that was consistent with a drug transaction but which by itself would not have given the officers reasonable suspicion to stop them. However, by the time the officers stopped the defendant, his companion had already fled. As per the Supreme Court's ruling in Benjamin, the officers had reasonable suspicion to stop the fleeing companion. We find that the combination of the companion's flight, the fact that the area was known for a high volume of narcotics activity and the observance of activity consistent with a drug transaction gave the officers reasonable suspicion to stop and question the defendant.
Furthermore, we find that the subsequent frisk of defendant and seizure of evidence were also valid. As noted above, there must be some evidence that the officers were fearful for their safety or reasonably believed that the defendant was armed in order to justify the frisk under La.C.Cr.P. art. 215.1. The officer testified that they frisked the defendant to look for weapons for their safety. We find this was a sufficient reason to validate the frisk under art. 215.1.
The seizure of the bag of cocaine was also lawful under the "plain feel" exception to the warrant requirement because the State showed that the nature of the bag of cocaine was "immediately apparent" to the officer when he felt it in the defendant's pocket. In Denis, pp. 9-10, 691 So.2d at 1300, this court set forth the requirements of the "plain feel" exception:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La. App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level *146 crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a pat-down was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir.11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
Here, the officer testified that his partner was frisking the defendant when he discovered what felt like a large bag of individuallywrapped bags of a powdered substance which he believed to be cocaine due to his work in the narcotics division. Given this testimony, we find the State showed that the nature of the contents of the bag was "immediately apparent" to the officer. Thus, because the initial stop and frisk were valid, the seizure of the cocaine was lawful.
Based on our finding that the stop and the frisk were valid, and the subsequent seizure of the bag containing the individually-wrapped bags of cocaine was lawful, we reverse the trial court ruling granting defendant's motion to suppress the evidence. The motion to suppress the evidence is denied. This case is remanded for further proceedings.
REVERSED AND REMANDED.