STATE OF LOUISIANA   \*   NO. 2019-K-0627

VERSUS       \*

           COURT OF APPEAL

COREY STEVENSON   \*

           FOURTH CIRCUIT

         \*

           STATE OF LOUISIANA

     \* \* \* \* \* \* \*

APPLICATION FOR WRITS EXPEDITED CONSIDERATION
DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 544-339, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Paula A. Brown, Judge Dale N. Atkins)

Leon Cannizzaro
DISTRICT ATTORNEY
Donna Andrieu
Scott G. Vincent
ASSISTANT DISTRICT ATTORNEYS
Parish of Orleans
619 S. White Street
New Orleans, LA 70119

   COUNSEL FOR RELATOR/STATE OF LOUISIANA

James Hoeffgen
ORLEANS PUBLIC DEFENDERS
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

   COUNSEL FOR RESPONDENT/DEFENDANT

       **WRIT GRANTED; JUDGMENT
       REVERSED IN PART
       JULY 26, 2019**

Relator, the State of Louisiana, seeks expedited review of the trial court's May 10, 2019 ruling, which partially granted a motion to suppress filed by Defendant, Corey Stevenson, and found no probable cause to substantiate the charge of possession of a firearm by a convicted felon. We grant the writ and reverse the trial court's ruling.

## PROCEDURAL HISTORY

On January 31,2019, Defendant, Corey Stevenson, was charged by bill of information with possession of a firearm by a convicted felon and distribution of marijuana in an amount less than 2.5 pounds, in violation of La. R.S. 14:95.1 and La. R.S. 40:966(B)(2(A), respectively.

Defendant appeared for arraignment on February 4, 2019, and entered a plea of not guilty. Thereafter, Defendant filed several pre-trial motions, including a motion to suppress the evidence and a motion for preliminary examination. The matter came before the trial court on April 8, 2019. After hearing testimony from Detective Rayvon Souffrant and arguments from counsel, the trial court permitted Defendant to brief his arguments and reset the matter for a ruling on the motion.

1

On May 10, 2019, the trial court granted the motion to suppress evidence in part and denied the motion in part. The trial court granted the motion as to the handgun recovered during the search of Defendant's backpack, but denied it as to the marijuana recovered during the search of Defendant's momentary companion, Willie Wallace. The trial court thereafter found insufficient probable cause to support the charge of possession of a firearm by a convicted felon against Defendant and sufficient probable cause to support the distribution of marijuana charge.

The State objected to the trial court's ruling as to the partial granting of the motion to suppress evidence and the finding of insufficient probable cause for the firearm charge and noticed its intent to seek supervisory review. The State also moved for a stay of the proceedings pending a resolution of its writ application, which the trial court denied.

The State filed a writ application with this Court on July 22, 2019, seeking expedited consideration.[1] The same date, this Court ordered that the trial court file a *per curiam* and that Defendant file a response to the State's writ application by 12:00 p.m., Wednesday, July 24, 2019. On July 24, 2019, this Court received both the *per curiam* and Defendant's opposition to the writ application.

Trial is currently set on August 5, 2019.

**FACTUAL BACKGROUND**

At the hearing on the motion to suppress the evidence, Det. Souffrant testified that on November 24, 2018, during the Bayou Classic, he was on

---

[1] Defendant sought writs with this Court of the trial court's denial of the motion to suppress evidence as to the marijuana recovered during the search of Wallace. This writ application was denied by this Court on July 17, 2019. *See State v. Stevenson*, *unpub.*, 2019-0596 (La. App. 4 Cir. 7/17/19).

2

proactive foot patrol in the French Quarter with several other officers. Louisiana State Troopers were also patrolling due to the large quantity of pedestrians on the street that night. Det. Souffrant stated the City experiences the highest fluctuation of narcotics and firearm offenses during the Bayou Classic and Mardi Gras season. He said the public concern for safety was "at is highest" outside Mardi Gras.

Det. Souffrant testified that at approximately 12:00 a.m. he was headed northbound on Canal Street, when he observed Defendant and another individual, Wallace, walking side-by-side, engage in a hand-to-hand transaction. Specifically, Det. Souffrant stated that he observed Defendant place a clear plastic bag of vegetable matter, consistent with marijuana, into Wallace's left hand in exchange for currency. Det. Souffrant testified that he was approximately two feet from Defendant and Wallace when he observed the transaction and noted that they were "attempting to conceal" the exchange. He estimated that the transaction lasted about twenty seconds.

The officers then elected to stop the individuals and handcuffed Defendant and Wallace while they investigated the suspected narcotics transaction. At some point during the detention, Louisiana State Police Officer, Trooper Crooks, advised Defendant of his *Miranda* rights. Det. Souffrant testified that the officers discovered a handgun inside Defendant's backpack during a "search incident to [his] arrest." Sixty-four dollars in currency and two hundred and forty dollars in counterfeit currency were also found on Defendant's person. The officers also recovered one gram of marijuana in a small plastic bag from Wallace's pant pocket.

Det. Souffrant identified an analysis report confirming the substance found on Wallace was marijuana. He also identified a body camera worn by another

3

officer on the scene, Officer Newsome, which was then played before the court. In the video, an officer can be heard reciting *Miranda* rights to Defendant. Defendant then interrupts the officer and denies having a gun. The video depicts Defendant in handcuffs and an officer holding the handgun discovered in Defendant's backpack. The video also shows Wallace in handcuffs, who admits to being in possession of marijuana. Det. Souffrant later identified two seized currency report forms, and a certified copy of the docket master from Case No. 460-395 of Defendant's predicate conviction.[2]

On cross-examination, Det. Souffrant admitted that the police report provides that the officers observed Defendant "place a small plastic material into [] Wallace's left hand" and does not indicate that the officers observed vegetable matter contained in the plastic bag. Det. Souffrant also identified the police report, which was admitted into evidence, over the State's objection.

### DISCUSSION AND ANALYSIS

It is well settled that "a trial court's ruling on a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion." *State v. Wells*, 2008–2262, p. 5 (La. 7/6/10), 45 So.3d 577, 581. When a trial court finds facts based on the weight and credibility of witnesses' testimony, a reviewing court may not overturn those findings unless there is no evidence to support them. *Id.* at p. 4, 45 So.3d at 580. On the other hand, a trial court's holdings on questions of law are reviewed *de novo*. *Id.* At a hearing on a motion to suppress, the burden is on the state to prove the admissibility of evidence seized without a warrant. La.

---

[2] The State alleges that the docket master shows Defendant was previously convicted of attempted armed robbery. This exhibit was not included in the writ application. However, the bill of information does allege Defendant was previously convicted of armed robbery in Case No. 460-395.

C.Cr.P. art. 703; *State v. Ulmer*, 2012-0949, p. 5 (La. App. 4 Cir. 5/29/13), 116 So.3d 1004, 1007.

The State argues that the trial court erred in granting the motion to suppress the handgun and finding insufficient probable cause to substantiate the charge of possession of a firearm by a convicted felon. In its brief, the State claims that reasonable suspicion existed to detain Defendant and that the protective search of Defendant was reasonable under the circumstances. However, Det. Souffrant refers to the search of Defendant as a search incident to his arrest and nowhere in his testimony describes the search of Defendant as protective frisk. Moreover, we find that the officers had probable cause to arrest Defendant when they initially approached Defendant. Accordingly, this opinion will first address probable cause and then the reasonableness of the search of Defendant incident to his arrest.

With regard to probable cause to arrest, this Court in *State v. Gayton*, 2013-1613, pp. 10-11 (La. App. 4 Cir. 12/10/14), 156 So.3d 738, 746–47, acknowledged the following principles:

> "Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense." [State v.] *Surtain*, [20]09–1835, p. 7 [(La.3/16/10)]; 31 So.3d [1037,] 1043. Probable cause is a non-technical concept, weighing "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [*Illinois v.*] *Gates*, 462 U.S. [213,] 231, 103 S.Ct. 2317[, 76 L.Ed.2d 527 (1983))]. This standard does not require that "the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances." [*State v.] Sylvester*, [20]02–0743, p. 4 [(La. App. 4 Cir. 12/11/02)]; 834 So.2d [1166,] 1168. The concept is fluid, "turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. "The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate

basis for the arrest of a person." *Sylvester,* [20]02–0743, p. 5; 834 So.2d at 1169 (citing *State v. Fisher,* 97–1133, p. 7 (La.9/9/98); 720 So.2d 1179, 1184).

"The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or near a preponderance standard demands." *State v. Lawrence,* [20]02–0363, p. 3 (La. App. 4 Cir. 5/8/02); 817 So.2d 1216, 1220. Our review is "based on an assessment of the collective knowledge possessed by all of the police involved in the investigation...." *State v. Pratt,* [20]08–1819, p. 1 (La.9/4/09); 16 So.3d 1163, 1164 (per curiam). "Deference should be given to the experience of the policemen who were present at the time of the incident. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts." *State v. Cook,* [19]99–0091, p. 7 (La. App. 4 Cir. 5/5/99); 733 So.2d 1227, 1232 (citations omitted). Furthermore, "[t]he reputation of the area is an articulable fact upon which a police officer may legitimately rely." *Lawrence,* [20]02–0363, p. 3; 817 So.2d at 1220.

*Id.*

This Court in *Gayton* further recognized that an officer's observation of a hand-to-hand transaction provides probable cause to arrest. In *Gayton*, an officer observed the defendant from roughly twenty feet away receive a small unknown object in exchange for money. The defendant was subsequently stopped and searched by officers, wherein crack cocaine and a crack pipe were discovered in the defendant's pants. The Fourth Circuit found the officer's unobstructed observation of the suspected drug transaction was sufficient to establish probable cause to arrest the defendant for possession of an illegal narcotic. *Gayton*, 2013-1613, p. 13, 156 So.3d at 748. The Court also found that because the officers had probable cause to arrest, the search incidental to the defendant's arrest was reasonable. In reaching its conclusion on probable cause, the *Gayton* Court noted the recent jurisprudence from the Louisiana Supreme Court on hand-to-hand transactions:

6

The Louisiana Supreme Court has twice found that a police officer, after witnessing a hand-to-hand transaction, had probable cause to believe that an offense had occurred. *See State v. Smith,* 11–0312, p. 1 (La.2/21/11); 56 So.3d 232, 233 (per curiam); *Surtain,* 09–1835, p. 12; 31 So.3d at 1046. In *Smith,* the police witnessed a hand-to-hand transaction occur in a hotel parking lot between a person on foot and the occupant of a vehicle that was driving slowly, possibly "trolling" for drug buyers, through two separate hotel parking lots known for drug trafficking. The Court found the circumstances sufficient to establish probable cause to justify the arrest of the defendant.

In *Surtain,* the police were performing surveillance in a neighborhood when they observed the defendant standing in front of an abandoned apartment building known for drug sales. An individual approached and handed money to the defendant in exchange for a small, white, unknown object that he removed from a larger bag. The Court found the subsequent search of the defendant to be reasonable as incident to his lawful arrest, holding that the police, after witnessing a hand-to-hand transaction, were objectively reasonable in believing that a crime had occurred.

*Gayton,* 2013-1613, pp. 13-14 (La. App. 4 Cir. 12/10/14), 156 So.3d 738, 748–49.

In the present case, similar to *Gayton* and the cases cited therein, Det. Souffrant testified that he observed what he believed to be a hand-to-hand transaction of illegal narcotics based on his experience and training as an officer. While the police report indicated that the contents of the plastic bag exchanged were unknown, Det. Souffrant did testify at the hearing the bag contained vegetable matter, consistent with marijuana. Also, even if the officers did not see what was contained in the plastic bag, this is not fatal to a finding of probable cause. *See Gayton,* 2013-1613, p. 13, 156 So.3d at 748 (finding probable cause existed to arrest even though the officer observed an unknown object being exchanged for currency); *see also State v. Bush,* 2012-0720, p. 2 (La. 6/1/12), 90 So.3d 395, 396 (recognizing that United State Supreme Court has rejected "that the officer must be possessed of near certainty as to the seizable nature of the items" or that an officer must "know" before seizing an item that the item contained

7

contraband); *State v. Fearheiley*, 2008-0307, p. 2 (La. 4/18/08), 979 So.2d 487, 488–89 (the officers were justified in detaining a defendant where they observed an apparent hand-to-hand transaction although the officer could not see what either person had in his or her hand); *State v. Campbell*, 93-1959, p. 11 (La. App. 4 Cir. 1994), 640 So.2d 622, 629 (suggesting that if an officer were required to be a hundred percent certain that an object in plastic bag was narcotics, "it would be virtually impossible to ever make a drug arrest"). Considering Det. Souffrant's training in the field of narcotics; that Defendant was observed walking in close proximity to another individual and exchanged a plastic bag for money approximately two feet away from the officers; and that there was testimony that there was an influx of narcotics and firearms during Bayou Classic and Mardi Gras season, there was probable cause to arrest Defendant for a narcotics violation.

Moreover, as in *Gayton,* the officers' search of Defendant's backpack was permissible as a search incident to Defendant's arrest. The reasonableness of the arrest based upon probable cause under the Fourth Amendment extends to the search incidentally conducted. *State v. Surtain*, 2009-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043 (citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973)). This Court in *Gayton* further explained:

> Since probable cause exists to justify a lawful arrest, a search incidental to that arrest is permissible and requires no further justification. *See Robinson,* 414 U.S. at 235, 94 S.Ct. 467. "A police officer's determination as to how and where to search the person of a suspect whom he has arrested is a necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search." *Sherman,* [20]05–0779, p. 14; 931 So.2d at 295 (citing *Robinson,* 414 U.S. at 235, 94 S.Ct. 467). "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is ... 'reasonable' ... under [the Fourth] Amendment." *Robinson,* 414 U.S. at 235, 94 S.Ct. 467.

"Warrantless searches incidental to arrest are reasonable because when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession." *Sherman,* [20]05–0779, p. 14; 931 So.2d at 295 (citing *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Thus, "[t]he justification or reason for the authority to search incident to a lawful arrest rests as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Id.,* 05–0779, p. 11; 931 So.2d at 293 (citing *Robinson,* 414 U.S. at 234, 94 S.Ct. 467). The authority to search a person incident to a lawful arrest "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Robinson,* 414 U.S. at 235, 94 S.Ct. 467.

*Gayton*, 2013-1613, pp. 11-12, 156 So.3d at 747–48.

Based on these principles, probable cause existed to arrest Defendant; the warrantless search of Defendant was reasonable as incident to his lawful arrest.[3]

---

[3] Even if the officers lacked probable cause to arrest Defendant, the officers had reasonable suspicion to conduct an investigatory stop of Defendant based on the hand-to-hand transaction. *See Ulmer*, 2012-0949, pp. 7-8, 116 So.3d at 1009 (finding that there was reasonable suspicion for an investigatory stop a where the police observed an apparent hand-to-hand transaction in high drug-trafficking area); *State v. Fearheiley*, 2008-0307, p. 2 (La. 4/18/08), 979 So.2d 487, 489 (holding that the officer was justified in detaining the defendant for a drug transaction for an exchange that lasted no more than fifteen to twenty seconds inside a car in a parking lot even though officer could not see what either person had in his hand, and the encounter had a possible innocent explanation); *State v. Lazard*, 2008–0677, p. 5 (La. App. 4 Cir. 12/10/08), 2 So.3d 492, 496 (finding that the police officers had reasonable suspicion to stop the defendant when the officers observed a hand-to-hand exchange between the defendant and an unknown male "that they suspected was a drug transaction based upon their experience and the reputation of the area"). The officers were likewise justified in conducting a protective frisk of Defendant during his detention. As noted above, Det. Souffrant suspected that Defendant had engaged in a drug transaction. This Court has acknowledged a connection between the drug trade and weapons. *See State v. Jones*, 1999-0861, p. 14 (La. App. 4 Cir. 6/21/00), 769 So.2d 28, 39 ("a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities"); *see also Lazard*, 2008-0677, p. 6, 2 So.3d 492 at 496 (finding that the officers were justified in conducting a pat-down search of the defendant for weapons where the officer stated that he suspected that the defendant and unknown man had engaged in drug transaction, and after the defendant exited car, the officer recognized the defendant from previous narcotics investigation). The record also provides that there was a large volume of pedestrians in the area because of the Bayou Classic and as a result, the State Troopers were assisting the police in its surveillance. Further, Det. Souffrant stated that during Mardi Gras and the Bayou Classic there is an increase in narcotics and firearm offenses in the French Quarter, creating a high public safety concern. Under the circumstances, a reasonably prudent officer would be warranted in believing that his safety or the safety of others was a concern, which justified the protective search of Defendant for weapons during the investigatory stop.

Accordingly, the trial court erred in suppressing the firearm found in Defendant's backpack and finding that there was insufficient probable cause to substantiate the charge against Defendant for possession of a firearm by a convicted felon.

For the foregoing reasons, we grant the State's expedited writ application and reverse the ruling of the trial court, which partially granted the motion to suppress and found no probable cause to substantiate the charge of possession of a firearm by a convicted felon.

**WRIT GRANTED; JUDGMENT REVERSED IN PART**