CRAIN, J.
| ¡After being charged by bill of information with violating Louisiana Revised Statutes 40:967 and 969 and pleading not guilty, the defendant, Isreal Dawson, was convicted following a jury trial of possession with intent to distribute a Schedule IV controlled' dangerous substance (Cariso-prodol) (count 1), possession with intent to distribute a Schedule IV controlled dangerous substance (Alprazolam) (count 2), possession with intent to distribute a Schedule IV controlled dangerous substance (Diazepam) (count 8), possession with intent to distribute a Schedule II controlled dangerous substance (cocaine) (count 4), possession of a Schedule IV controlled dangerous substance (Clonazepam) (count 6), and possession of a Schedule IV controlled dangerous substance (Phenter-mine) (count 7).[1] The defendant was sentenced to ten years at hard labor on each of counts 1, 2, 3, and 4, with the first two years of the sentence on count 4 to be *576 served without the benefit of probation, parole, or suspension of sentence, and five years at hard labor on each of counts 6 and 7. All sentences were ordered to run concurrently. We affirm the convictions and sentences.
FACTS
As part of a roundup of suspected narcotics dealers with active warrants, agents with the Lafourche Parish Sheriffs Office Drug Task Force knocked on the front door of the trailer where the defendant was living with his girlfriend. They heard movement inside the trailer and the sound of pills falling to the floor. Minutes later, the defendant opened the trailer door. The defendant was advised that there were active warrants for his arrest and asked if the agents could enter and talk to him. The defendant moved to the side and allowed the agents to enter. The agents saw multiple pills trailing over an approximately fifteen-foot area of the Rfloor between the doorway and the cabinet under the kitchen sink. The defendant claimed that the pills were his and that he had a prescription for them.
The defendant’s girlfriend, Crystal Davis, owned the trailer and consented both verbally and in writing to the agents searching the kitchen area. The agents recovered the pills on the floor and opened the partially opened cabinet door. Inside the cabinet, they found more pills, a powder substance in a clear plastic Ziploc bag, and digital scales. The pills were determined to contain Carisoprodol, Clonazepam, Phentermine, Alprazolam, and Diazepam. The powder substance was determined to be 10.85 grams of cocaine.
CONSTITUTIONAL CHALLENGE TO LOUISIANA REVISED STATUTE 40:991
In his first assignment of error, the defendant argues that Louisiana Revised Statute 40:991 is unconstitutional. Legislation is presumed to be valid and a party-wishing to challenge its constitutionality must raise the challenge in the district court, the challenge must be specially pled, and the grounds for the challenge must be particularized. State v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, 718-19. The defendant did not raise his constitutional challenge to Section 991 in the district court. Accordingly, the issue is not properly before this court.
MOTION TO SUPPRESS
The defendant filed a motion to suppress the evidence against him, which was denied. In his second assignment of error, he contends that the district court erred by denying his motion and refusing to exclude the evidence seized during the warrantless search of Davis’s trailer. Specifically, he argues that Davis did not freely and voluntarily consent to the search of the trailer because she was threatened with the possibility of going to jail if she did not consent to the search.
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and | ¿seizures. A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure was justified by one of the narrow exceptions to the warrant requirement. State v. Surtain, 09-1835 (La.3/16/10), 31 So.3d 1037, 1043. Free and voluntary consent to search given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected is a recognized exception to the warrant requirement. See United States v. Matlock, 415 U.S. 164, 171, 94 *577 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). It is-the State’s burden to prove the admissibility of any evidence seized without a warrant. La.Code Crina. Pro. art. 703D. Therefore, the State bears the burden of proving that the consent was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); State v. Smith, 433 So.2d 688, 693 (La.1983). A district court’s decision relative to the suppression of evidence is entitled to great weight and will not be set aside unless there has been an abuse of discretion. State v. Thompson, 11-0915 (La.5/8/12), 93 So.3d 553, 563. Findings of fact based on the weight of the testimony and credibility of the witnesses are entitled to great deference and may not be overturned unless there is no evidence to support them. Legal findings are reviewed de novo, Id.
At the hearing on the motion to suppress, Agent Scott Pritchard testified that Davis gave both verbal and written consent to search. Agent Joshua Barbera testified that he told Davis that they could see pills on the floor and under the sink and that they only wanted to search those areas. Agent Barbera also told Davis that if a search warrant was obtained and something illegal that she had knowledge of was found, there was a possibility that she could go to jail, which he characterized as being “up front” with Davis. Agents Barbera and Pritchard, as well as Agent Aaron Montez who was also in the trailer when Davis gave consent, ^testified that no threats were made toward Davis. Agent Barbera described Davis as “very cooperative” and testified that he reviewed the written consent form with Davis before she voluntarily signed it. As completed, the written consent form indicated Davis’s understanding that items located in the area to be searched could be used against her in a court of law and that no promises had been made to her, nor was there any pressure or coercion to consent to the search. Agent Barbera testified that at no time did Davis state that they were not allowed to search.
Davis offered testimony, conflicting with that of the agents, claiming that multiple agents entered her trailer without permission, arrested the defendant, and removed him from the trailer in handcuffs. Three agents remained inside. She denied seeing pills on the floor and described the agents as being in the process of searching when one of them indicated he saw the pills. She claimed they were already looking inside of the kitchen cabinet when she was asked for permission to search. Davis testified that she gave permission to search after she was asked if she wanted her children and career taken away and was told that she had to let them search because if she did not, and they came back with a search warrant, they would “give [her] the charges.” She denied reading the written consent to search form before signing it.
The defendant testified that upon answering the door, the agents told him to step aside and have a seat, which he did. According to the defendant, the officers entered the trailer and, as one stated they had a warrant for the defendant’s arrest, others went into the kitchen and stated they saw pills on the floor. The defendant stated that the agents were taking pictures before they escorted him out of the trailer.
Agent Barbera was called on rebuttal after Davis and the defendant testified. He denied entering the trailer without permission and telling Davis that she was Ingoing to lose her child. On the morning in question a news crew was following the roundup, and Agent Barbera testified that he was wearing a microphone and everything that he said was being recorded. He *578 was still being recorded when Davis signed the consent form.[2] '
Because consent is a question of fact involving the credibility of witnesses, the determination of the district court, which had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Yarbrough, 418 So.2d 503, 506 (La.l982j. In oral reasons for denying the defendant’s motion to suppress the evidence, the district court stated that the defendant’s testimony in no way substantiated that of Davis. The court pointed out that the three agents who testified at the hearing no longer worked on the drug task force. Agents Barbera and Montez moved to different departments, and Agent Pritchard no longer worked for the Lafourche Parish Sheriffs Office. Thus, the district court opined that the agents, especially Agent Pritch-ard, had little incentive to be dishonest. The court also noted that it was impressed by the fact that Agent Barbera was wearing a microphone and was being monitored at the time of the search. Considering all of the evidence, the district court found that the form executed by Davis was valid, and that no threats were used in obtaining Davis’s signature.
The district court rejected Davis’s testimony and that of the defendant and credited the testimony of the agents. According to all three agents, they did not use threats or coercion in obtaining Davis’s consent. A statement by police officers that they will apply for a warrant if refused consent for a search does not necessarily vitiate the voluntariness of the consent. State v. Franklin, 95-1876 (La.1/14/97), 686 So.2d 38, 41. Based on the agents’ testimony, the district court had a reasonable basis for finding valid consent. Therefore, the search and seizure ofjjthe evidence was. lawful, and the district court did not abuse its discretion in denying the defendant’s motion to suppress the evidence. ' This assignment of error is without merit.
NON-UNANIMOUS JURY VERDICT
In his fourth and fifth assignments of error, the defendant argues that Louisiana Constitution article I, § 17A, which allows for non-unanimous jury verdicts, violates the Fourteenth Amendment of the United States Constitution, and the non-unanimous verdicts rendered in this case violate his right to a jury trial under the Sixth and Fourteenth Amendments of the United States Constitution.
As set forth above, a constitutional challenge may not be considered by an appellate court unless it was properly pled and raised in the court below. Hatton, 985 So.2d at 718. The defendant failed to properly raise his challenge to Article I, § 17A in the district court. Accordingly the issue is not properly before this court.[3]
*579 Accordingly, these assignments of error are without merit.
EXCESSIVE SENTENCES
The defendant argues in his third assignment of error that the district court erred in- imposing excessive sentences. However, the record before this court does not contain a copy of a motion to reconsider sentence or evidence that the defendant orally moved for reconsideration of the sentences. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, |sshall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. La.Code Crim. Pro. art. 881.1E. Thus, the defendant is procedurally barred from having. this assignment of error reviewed. See State v. Duncan, 94-1563 (La.App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam); State v. Myles, 616 So.2d 754, 758-59 (La. App. 1 Cir.), writ denied, 629 So.2d 369 (La.1993).
CONVICTIONS AND SENTENCES AFFIRMED.

. The State entered a nolle prosequi as to count 5, a charge of possession of a schedule II controlled dangerous substance (cocaine).

. No footage or recordings were played at the hearing.

. This court has repeatedly rejected the argument that recent legal developments have called the constitutionality of non-unanimous jury verdicts into question and held that the United States Supreme Court’s decision in McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), did nothing to alter the well-established jurisprudence holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials. See e.g. State v. Huey, 13-1227 (La.App. 1 Cir. 2/18/14), 142 So.3d 27, 32; State v. Dorsey, 12-1816 (La.App. 1 Cir. 2/4/14), 137 So.3d 651, 654-55, State v. Laurant, 12-1705 (La.App. 1 Cir. 4/26/13), 2013 WL 1791049, writ denied, 13-2323 (La.4/11/14), 139 So.3d 1014. For the same reasons, this court has rejected challenges to the constitutionality of Louisiana Code of Criminal Procedure article 782A, which provides that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury of twelve, ten of whom must *579 concur to render a verdict. See e.g. Huey, 142 So.3d at 32.