JAMES F. MCKAY III, CHIEF JUDGE
liThe State seeks a review of the trial court’s granting of the deféndant’s motion to suppress the evidence.
On May 6, 2016, the State filed a bill of information charging the defendant, Kayla M. Brignac, with posséssion of cocaine with intent to distribute; possession of oxycodone; possession of marijuana (third offense); and possession of a legend drug. On July 20, 2016, the defendant filed motions for discovery, suppression of evidence and for a preliminary hearing. The court conducted a hearing on the suppression motion on August 9, 2016, and at its conclusion denied the motion and found probable cause. On September. 9* 2016, the defense filed a motion for reconsideration on the-suppression issue;' the State filed an opposition on September 29, 2016; and after oral argument conducted the following day, the court granted the defense motion on October 6, 2016. The State noticed its intent to seek writs and the court set a return date of November 4, 2016 and granted its motion to stay the proceedings. The State timely filed the application on its due date. .
|2STATEMENT OF THE FACTS
Probation and Parole Officer Chris Turner testified' that he participated in a residence check of the defendant’s home on March 8, 2016, located at 524 ½ Bourbon Street. Officer Turner learned that the defendant may have been involved in illegal narcotics sales from another law enforcement agency. At approximatély 7 a.m., Officer Turner, accompanied by Agent Tiffany Eagles, arrived at- the residence where a man later identified ’as Jer-main Tobias answered the door. The officers relocated Jermain Tobias to the porch outside the residence and later learned that he was on parole in St. Charles Parish. After encountering another female *528 (Kisha Camile) in the home, the officers found the defendant in the far left bedroom. In the bedroom, occupied by the defendant, the officers observed what appeared to be a burned marijuana cigarette in plain view. The officers then searched the "kitchen and discovered:
... a black digital, scale with some resi.due on it, We found a bag containing four tan pills, another, bag containing, I believe it was five white oval shaped pills, . just, another pill, another white round pill, just some other baggies with some—it looked like some white residue, white powder residue on it, as well as, a bag containing some multi-colored like straws;
The tan pills were identified as. Flexeril. Outside the residence on the porch, in a container, the officers recovered approximately -10 small, clear bags containing white powder and another bag containing off-brown powder. The officers from the U.S. Marshals, the ATF and the. State Police discovered the contraband found on the porch. The officers then administered Miranda warnings to all the suspects; none made statements but‘Kisha Camile who directed the officers to additional nar-. cotíes (a small bag of marijuana) located in her.bedroom. During a search l.qincident to arrest, officers recovered $1266.00 in various denominations from Jermain Tobias.
On cross,- Officer Turner again noted the presence of officers from other law enforcement agencies and acknowledged that he was not the agent regularly assigned to monitor, the defendant. Officer Turner also admitted that when he personally arrived at. the residence through the porch, he was not inspecting the area for plastic key containers (where the additional contraband was found). After he and Agent Eagles entered the residence and removed Jermain Tobias, Officers Bartel, Easley and- Dickens remained on the porch with him. Officer Turner identified Agent Bo Bartel of the U.S. Marshal’s Office as the officer who discovered the. contraband in the key container.
The defendant’s attorney conducted cross and elicited the admission that the report prepared by Officer Turner contained a clerical .error, indicating that defendant was the owner of the currency seized from Jermain Tobias. Office Turner clarified that Officer Bartel “was confident that they key holder found on the porch ... was not there prior to Mr. ■ Tobias’ presence.”
Agent Rebecca Soileau testified that she was the sole probation officer assigned to the defendant. She had previously conducted a residence verification to establish that the defendant lived at 524 ½ Bourbon Street.
At the conclusion of the hearing, the court denied the motion' to suppress, finding that the tip, coupled with the defendant’s status as a probationer, was sufficient to authorize the search of the residence. The defendant then filed a motion for reconsideration and the State filed an opposition to the motion. The trial court then reconsidered its earlier ruling denying the motion. Finding it “compelling” that Agent Soileau was the sole officer assigned to the defendant’s Incase and “that there were outside agencies who were there on an anonymous tip,” the court concluded that the State’s conduct “smack[ed] of subterfuge to the point where ,.. Probation and Parole was being utilized in a manner in which they were legally not able to do so.” The trial court then granted the defendant’s motion to suppress the evidence.
DISCUSSION
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and *529 seizures. Ordinarily, when evidence is seized- without a warrant, the burden is on the State to demonstrate that a search is justified by some exception to the warrant requirement. La. C.Cr.P. art. 703(D); State v. Bell, 2009-0574, p. 4 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 506 (citation omitted).
Individuals on probation possess a diminished expectation of privacy. State v. Malone, 403 So.2d 1234, 1240 (La. 1981); see also State v. Marino, 2000-1131, p. 4 (La.App. 4 Cir. 6/27/01), 804 So.2d 47, 52. “This reduced expectation of privacy is based oh a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the ’probationer is in compliance.. with the provisions of his probation.” State v. Fields, 2012-0674, p. 9 (La.App. 4 Cir. 6/19/13), 120 So.3d 309; 317 (citing State v. Thomas, 96-2006, p. 2 (La.App. 4 Cir. 11/06/96), 683 So.2d 885, 886). That reduced expectation of privacy authorizes “reasonable warrantless searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown.” State v. Jones, 2012-0438, p. 8 (La.App. 4 Cir. 3/13/13), 119 So.3d 9, 15 (citing Malone, 403 So.2d at 1238).
| ¡/This Court has recognized that a probationer is not subject to the unrestrained power of the authorities, and “a search of the probationer may not be a subterfuge for a police investigation.” Fields, 2012-0674, p. 9, 120 So.3d at 317 (quoting Thomas, 96-2006, p. 2, 683-So.2d at 886). However, “a probation officer may conduct a warrantless search of a probationer’s property when ‘the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere -in which it takes place.’ ” Id. “In order to determine reasonableness we must consider ‘(1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.’ ” Id.
In the instant case, the officers possessed reasonable suspicion to conduct a search of the residence based on “information that Ms. Brignac may be involved in' the sales of illegal narcotics.” While the reliability of that information was not explored by either the defense or the State at the suppression hearing, such a tip likely provided’ the state "with the requisite level of cause to conduct a residence check, if not á full blown search of the home. State v. Drane, 36,230, pp. 7-8 (La.App. 2 Cir. 9/18/02), 828 So.2d 107, 112 (Warrant-less'search of parolee’s apartment was reasonable,’where search was done by probation and parole officers, search was performed after officers received credible tip that parolee.was involved in production of methamphetamine and after parolee tested positive for. methamphetamine use, and parolee refused to answer door until forced entry into apartment was threatened by officer). In addition, the initial scope and manner of the intrusion appears minimal insofar as officers immediately observed contraband in plain view of the defendant’s bedroom.
|f,As to the district court’s concern that the defendant’s probation officer played no role in- the search of the residence, that detail is of little importance as an appellate court’s review on the. legality of the search is “based on an assessment of the collective knowledge possessed by all of the police.involved in the investigation.” State v. Pratt, 2008-1819, p. 1 (La. 9/4/09), 16 So.3d 1163, 1164. In this case, the defendant’s status as a probationer did not operate a subterfuge to conduct a suspi-cionless search but rather .allowed officers to conduct the search.without a warrant *530 and based on less than probable cause. See Malone, supra.
Finally as discussed above, a marijuana cigarette was readily identifiable in plain view by the officers when they entered defendant’s room. The observation provided officers with the requisite level of cause to conduct a more thorough search of the remainder of the residence. See e.g., State v. Dimes, 2016-0129, p. 15 (La.App. 4 Cir. 6/22/16), 195 So.3d 1263, 1272.
.Here, the officers acted legally when they conducted the .warrantless search. The court therefore erred when it reconsidered its earlier ruling denying relief and granted the motion to suppress as the search does not exceed that which is permissible under the Fourth Amendment: Accordingly, this, writ is granted.
WRIT GRANTED
LOVE, J., DISSENTS AND ASSIGNS REASONS
belsome, j., Concurs in the RESULT